TRIMMIER v. THOMSON.

1. Executors sued upon the debt of their testator plead, *inter alia, plene administravit,* and verdict was rendered for the plaintiff generally. Judgment and execution were entered against the executors for the amount so found, "to be levied of the goods, &c., of testator in the hands of defendants to be administered, or which may hereafter come into their hands to be administered." After second action brought to recover this debt from the executors, individually, they made a motion to set aside the former judgment, or to make the same conform to the verdict and the facts proven, alleging by affidavit that no evidence was taken on the plea of *plene administravit,* and that the case was heard solely on the question of testator's indebtedness. *Held,* that the judgment was responsive to the issues involved and to the verdict, and could not be disturbed except as to the words, " or which may hereafter come, &c.," which were unauthorized and mere surplusage.

2. A judgment record, which is responsive to the issues necessarily involved, cannot be contradicted by proof of what was or was not tried.

3. A judgment generally against executors who do not plead *plene administravit,* is conclusive evidence of assets then in hand, in a second action of debt suggesting a *devastavit; a fortiori,* where such plea has been interposed and not found by the verdict.

4. An action against defendants to recover a debt established by a former judgment against them as executors, and alleging a *devastavit,* instituted within a year after the termination of the former action, is not barred by the statute of limitations.

---

Before FRASER, J., Spartanburg, July, 1881.

This was an action by F. M. Trimmier, administrator *cum testamento annexo* of Peyton Simmons, against H. H. Thomson and J. S. R. Thomson, and also a motion by defendants in a former action of the same plaintiff against the same defendants,

as executors of H. H. Thomson, deceased. The opinion suffi-ciently states the case.

*Messrs. Duncan & Cleveland,* for appellants.

*Messrs. Bobo & Carlisle,* contra.

April 18th, 1883. The opinion of the court was delivered by MR. JUSTICE MCGOWAN. It will simplify the many points made in these cases to make a short statement of facts. The first case named in the title was brought on a judgment previously obtained against the defendants as the surviving executors of H. H. Thomson, deceased, suggesting a *devastavit* by the executors. It appeared that in 1858 H. H. Thomson, Sr., died, leaving a handsome estate, which he disposed of by will, of which Mildred E. Thomson, Joseph W. Thomson, H. H. Thomson, Jr., and J. S. R. Thomson were named as executors; the two latter were minors at the time, and did not qualify until afterwards. At the beginning only the first two qualified, and, in adminis-tering the estate, paid the debts (except the one in controversy here), assented to legacies, and, to a large extent, settled the estate. They published no notice for creditors to present their demands, but had actual notice of the annuity debt to Simmons (of which, more hereafter), and had paid annually the amounts falling due on it—certainly until 1863—when the present de-fendants qualified.

In 1867, Peyton Simmons, to whom the debt above mentioned was payable, sued all the executors, including the present defend-ants. This debt of the testator had, as stated, been recognized certainly by the executors who first qualified, but no provision had been made for it, and they resisted the action, pleading that the bond had been given for slaves, who were emancipated, but not pleading *plene administravit.* In this suit payments were claimed to have been made on the Simmons debt, after the pres-ent defendants qualified. This suit abated by the death of Sim-mons in 1871, who left the claim to his wife by his will.

In 1873, F. M. Trimmier bought the bond, took out letters of administration, with the will annexed, on the estate of Sim-

mons, and brought another action against the present defendants as surviving executors (those first qualified having died in 1868). In this action the defendant executors admitted the cause of action against their testator, and set up as defenses failure of consideration and counter-claim, and · pleaded *plene administravit.* The case was stoutly resisted ·and submitted to a jury, which found a general verdict for the amount of the debt ($3,000) against the defendants. Upon this verdict judgment and execution were regularly entered by order, "to be levied and collected of the goods and chattels, rights and credits, lands and tenements of said H. H. Thomson, deceased, in the hands of said defendants to be administered, or which may hereafter come into their hands to be administered," together with costs, &c. An appeal from this judgment was taken, in which no objection was made to its form, and the Supreme Court affirmed it. 10 *S. C.* 119.

In 1879, the execution having been returned *nulla bona*, the plaintiff commenced this action against the executors, suggesting a *devastavit.* The executors answered, denying that they had assets of the testator in their hands at the time of the rendition of the former judgment, or since, or had committed any *devastavit*, pleading the statute of limitations, and setting up as a bar to recovery the long possession of ·the legatees and devisees under the will.

Pending this action, (October, 1880,) the defendants made a motion for an order setting aside the former judgment on which the action was brought, "or making the same conform to the verdict and the facts proved," &c. Along with this motion were filed affidavits of the defendants, and their lawyers in the former case, stating that no evidence was offered " on the plea of *plene administravit*, and the case was heard solely on the question as to whether defendants' testator owed the debt; that conforming to what was considered the usage of the bar and the understanding in the matter, no issue was made on the question as to indebtedness of defendants to the estate of their testator." Counter statement was made " that before the trial of the case, at the suggestion of J. S. R. Thomson (one of the counsel for defendants), plaintiff consented that defendants need not file

copies of the inventory returns, &c., as required by the rule, but that the original might be used, instead of said copies. That this was the only agreement made by deponent, or to his knowledge," &c. This constitutes the case second above stated.

The whole matter was referred to John E. Bomar, Esq., as referee, to take the testimony and state the same with his conclusions of fact. He did take the testimony, and made a very long and carefully prepared report, stating the complicated condition of the property in the hands of the legatees and devisees, and closing his report with the following conclusion of fact: "That neither of the defendants had assets in their hands at the rendition of judgment in favor of plaintiff, or have had since that time, except the sum of $350, received by the defendant, H. H. Thomson, Jr., on account of rent of the residuary real estate, and paid to his sisters, Mrs. Scaife and Mrs. Nowell, in 1878, and a bond of Jesse Cooper, given to their testator to indemnify him against the aforesaid claim of Peyton Simmons, which was put in suit promptly upon the dismissal of the appeal."

The cases were submitted to Judge Fraser, on written arguments, who refused to set aside or materially modify the judgment on the motion, and held that it was too late for the defendants now to show that, at the time the former judgment was rendered, they had no assets of their testator; and if it was not too late to make such question, that they had failed to show that they were not liable for the judgment debt of plaintiff, and therefore gave judgment for the plaintiff to the amount of his debt, interest and costs, with leave to issue execution for the same. The defendants appeal to this court upon various grounds, contained in twenty-eight exceptions, but, from the view which this court takes, it is unnecessary to state them at length here. They are in the "Case."

First. As to the motion to set aside the former judgment, or make it conform to the facts proved. For several reasons this can not be considered as an application, under section 195 of the code, to set aside the judgment taken against the defendants through their "mistake, inadvertence, surprise or excusable neglect." It is, in terms, a motion to make the judgment conform to the facts proved, which cannot be done. It is not clearly

perceived what change is desired. No particular form of judgment is proposed, and we cannot conceive what form could be given to it so as precisely to meet the view suggested. It could not be made a judgment against the testator alone, for he is dead, and his executors are before the court. It could not be made a judgment against the executors individually, for that is the very thing that is denied. It could not be a judgment for the plaintiff on the question of debt, and for the defendants as to assets, or, as it is called, *quando acciderint*, for the claim is that that question was not considered. It could hardly be proposed that the judgment should be for the plaintiff on the question of debt, with a statement that the question of assets was left undecided. Such seems to be the object of the motion.

But uncertainty is not the main difficulty. The judgment, as entered, was substantially right, because in conformity with the verdict. Under the rules of pleading applicable to cases where executors are sued, only one of three verdicts is possible: either for the defendant generally, for the plaintiff *quando acciderint*, or for the plaintiff generally. The latter was rendered here, and the only judgment that could have been entered was the one which was entered *de bonis testatoris*, &c. A judgment must be entered in conformity to the verdict, speaking from the record and the issues in the case, and it is not admissible to contradict the record and make a new verdict by showing what was or what was not actually proved. A verdict is the result of a trial, and if regular and free from impropriety, cannot in turn be subjected to trial, except by appeal. In considering the form of a judgment to be entered on it, we cannot hear what was or what was not proved, but what should have been proved—what, under the issues in the case, must be taken to have been proved, whether, as matter of fact, it was so proved or not. If the court could, at any subsequent time, change a judgment so as to make it conform to what might appear to have been proved or omitted at the trial, without regard to the verdict rendered, there never would be an end of litigation, but each successive struggle would be directed to the point that the judgment immediately preceding had not been entered according to the actual proof made.

There is no doubt that the court has the power in a proper case, as in *Carroll* v. *Tompkins*, 14 *S. C.* 223, to correct a mistake or clerical error in its own process in order to make it conform to the record ; but that does not authorize an alteration which would contradict the record and change the whole scope and effect of the judgment. The judgment here was in conformity to the verdict. It was regularly entered by order in 1877. It was appealed from, but no exception taken as to its form, and it was expressly affirmed by this court. We agree with the Circuit judge that the motion to change its form could not be granted ; but we may say that in considering the effect of the judgment, it will be taken to be in form, such as should have been entered on the verdict, that is to say, a judgment *de bonis testatoris vel si non de bonis propriis* as to costs. The verdict, which alone must govern, did not authorize the additional words " or which may hereafter come into their hands to be administered," and they will be disregarded as surplusage. Such phrase could only be inserted properly on a verdict *quando acciderint*, which was not rendered by the jury, and it is not competent to show that it was the understanding of the parties that such should be considered the import of the verdict.

" When the defendant in the previous recovery had neglected to plead *plene administravit*, a motion to open the judgment and for leave to file the plea, on an affidavit of instructions to the attorney in the former suit, was refused on the trial of the action of *devastavit* on the judgment." *Caldwell* v. *Micheau*, 1 *Spears* 276. In delivering the judgment of the court, Judge Wardlaw said : " This court is satisfied that the motion to set aside or open the former judgment was properly refused. There could be no end to litigation, if the judgment in such circumstances should be liable to disturbance."

Second. As to the force and effect that should be given to the first judgment against the executors upon the question of assets. We think it must be regarded as settled in this State, that a general judgment against an executor who does not plead *plene administravit* or *præter*, is conclusive evidence of assets in a second action of debt suggesting a *devastavit*; the only qualification being that a matter arising subsequent to the former action,

showing a destruction of the assets or removal of them from the hands of the executor without his fault, may be set up. *Ford* v. *Rouse, Rice* 220; *Young* v. *Kennedy*, 2 *McMull.* 81; *Caldwell* v. *Micheau*, 1 *Spears* 276; *Lowndes* v. *Pinckney*, 2 *Strobh. Eq.* 44; *Ewing's Ex.* v. *Peters*, 3 *T. R.* 685; 2 *Wms. Ex.* 1201, 1225; *Stark. Evid.* 562.

As we understand it, this proceeds on the ground that the action being against the executor for a debt of the testator, has embraced in it two distinct allegations, both of which are necessary to his recovery : first, that the testator owed the debt; and second, that the executor has assets to pay it, whether this latter is or is not expressly alleged in the complaint. The executor has the right to resist both allegations. He may plead *plene administravit*, indeed must do so, at the peril of having it concluded against him by default or confession that he has assets.

This conclusion rests upon the doctrine of that kind of estoppel known as *res adjudicata*; that a party having the opportunity in an action to make a defense and does not do so, is precluded from doing so afterwards. *Maxwell* v. *Connor*, 1 *Hill Ch.* 22. It seems to us that the doctrine of *res adjudicata* should apply with increased force, when the plea of *plene administravit* is put in, and there is notwithstanding a general verdict for the plaintiff. In such case it would seem to be the irresistible conclusion that the defense was made and failed.

But to this view it is earnestly replied, that nothing can be properly held to be adjudged which was never considered, and that in the former action, as a matter of fact, no evidence was offered or considered upon the question of assets, but by the agreement and stipulations of counsel it was intentionally omitted. The statements do not agree as to the alleged stipulations, but if they did we cannot listen to affidavits as to what was or was not agreed to be tried. The case furnishes a good illustration of the rule which forbids the court to consider stipulations not in writing. Besides we can only look to the record, which shows that *plene administravit* was put in, and that there was a general verdict for the plaintiff. The issue was an entirety and indivisible by agreement. *Wells Res Adjud.* §§ 228, 248. We need not inquire whether the *onus* of proof was on the

plaintiff or defendants on the question of assets. We incline to think that the plea was a mere matter of defense, but in either case, whether new matter to be proved or mere matter of defense, the result would be the same; that having an opportunity to make the defense, indeed being bound to make it at their peril, they put in the proper pleas and there was a general verdict against them, either from failure to offer proof or from insufficient proof.

This court has lately, in the case of *Hart* v. *Bates*, 17 *S. C.* 42, attempted to define the doctrine of *res adjudicata* as follows: " It seems to be now settled that, though the proceeding is in another jurisdiction, the judgment will be conclusive provided the court had jurisdiction and the judgment was directly on the point. * * * It is claimed, however, as a sequence of this rule, that the defense of *res adjudicata* extends to every question which could have been made, whether it was considered or not. There are cases which seem to go to that extent, but we think the decided preponderance of authority sustains the more reasonable doctrine, ' That a judgment is not, technically, conclusive of any matter, if the matter is not such that it had, of necessity, to be determined before the judgment could have been given; that it was not merely collateral nor to be inferred by argument from the judgment.' 6 *Wait Ac. & Def.* 785, citing *Hunter* v. *Davis*, 19 *Geo.* 413, and other cases. Or, in the language of Mr. Justice Miller, of the Supreme Court of the United States: ' The rule is, that when a former judgment is relied on it must appear from the record that the point in controversy was necessarily decided in the former suit, or be made to appear by extrinsic proof that it was in fact decided.' "

Let us apply this rule here. Does it appear from the record that the point in controversy was necessarily decided in the former suit? If so, then parol proof upon the subject is inadmissible to contradict the record. It is very true that there are cases in which parol proof was admitted to show that the point was actually considered or not considered, but never when the record shows that the point was necessarily involved. Otherwise records would stand for nothing, and everything would be set afloat. The point here is, as to whether there were assets in

the hands of the executors at the time the first judgment was rendered. Was that precise point (disregarding alleged stipulations) necessarily involved and decided in the former suit? The plaintiff sued the executors for a debt of their testator. The executors denied that the testator owed the debt, or, if so, that they had assets to pay it. Upon this record appears a general verdict for the plaintiff, upon which judgment and execution were issued. We cannot resist the conclusion that both points made were directly involved, and that the verdict necessarily decided both.

It is admitted that such would have been the import of the verdict if the plea of *plene administravit* had not been filed at all, and how can its import be less when the verdict was rendered notwithstanding the plea? The defendants had an opportunity to make the defense, and either made it and failed, or, what is the same thing, omitted to make it. If no assets had been shown the verdict would have been clean for the defendants, unless the plaintiff had chosen to take a verdict *quando acciderint.* If the executors at that time could have made the proof that they had in hand no assets of their testator, and that the estate had been distributed before the executors or some of them had notice of the claim on the Simmons bond, it was a fatal mistake not to have made that proof at that time, when they had an opportunity to do so.

According to this view, the former judgment was conclusive evidence of assets in the hands of the executors at that time, and this, with the return of *nulla bona* on the execution, makes it unnecessary to consider the many other minor questions made in the case. We do not see how the statute of limitations can apply. The debt, having gone into judgment against the estate of the testator, must be paid. It may be matter of regret that it cannot fall equally upon all those who are enjoying the property of the testator, in common with those who happen to be executors; but the fault was in undertaking to assent to legacies and devises and distribute the estate before the debts were paid or even ascertained. Creditors are required by law to look for payment to executors, whose first duty is to ascertain and pro-

vide for their payment, and, therefore, the burden of this debt must, at least in the first instance, fall upon the executors.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

A petition was filed in this case for a rehearing of so much of the foregoing opinion, or rather of the judgment of the court, as affirmed the judgment of the Circuit Court, entered by the clerk, under Judge Fraser's decree, in which Circuit judgment costs of the first case—*Trimmier* v. *Thomson's Executors*—were taxed against the executors individually. The matter here complained of was the ground of one of the exceptions upon which the appeal was taken.

May 20th, 1883.　The following order was passed :

PER CURIAM.—We have carefully considered this petition for a rehearing of the case, so far as regards the costs of the first case against the executors of H. H. Thomson, deceased, viz. : $156.50, which, it seems, the clerk of the court, in taxing the costs of the second case against the same parties for a *devastavit*, added to the proper costs of that case—making the judgment against the defendants, individually, amount to the sum of $4,000 and $304.35 costs. (This latter item including the tax costs of the first case—$156.50.)

As to the costs of the first case, no complaint is made against the decision of Judge Fraser, who ordered that " The plaintiff should have judgment against the defendants for the sum of $3,000, with interest from April 6th, 1877 ; and for costs, with leave to issue execution for the same." The judgment of this court was intended simply to affirm the judgment of Judge Fraser, which, as we understand, only adjudged that the defendants should pay the costs proper in the second case for a *devastavit*, in which he was then announcing judgment. No other matter was properly before us on appeal. This being the case, we do not see that it is necessary or proper that the point as to the costs in the first case should be re-argued in this court, which has made no order upon the subject. We see no authority, either in the decision of Judge Fraser or the judgment of this court,

for adding into the last judgment against the defendants, individually, the tax costs in the first case. These costs are not properly taxable in the last case for *devastavit*, and they must stand as they were left at the termination of the first case, which was appealed to this court and affirmed. By whom they are to be paid, and in what character—whether individually or out of the assets of the estate—must be ruled by some proper authority before this court can have a right to consider the subject.

The motion for a rehearing is refused.